U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_United States Bankruptcy Judge_

Signed October 15, 2012

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § § | **CHAPTER 7** |
| PERRY, MARSHAL | § | |
| f/d/b/a DIAMOND P TREE MULCHING | § | CASE NO. 12-41595-DML-7 |
| | § | |
| DEBTOR. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is the *Trustee's Objection to Exemptions* (the "Objection") filed on June 13, 2012, by chapter 7 trustee John Dee Spicer ("Trustee") objecting to the exemptions claimed by Marshal Perry ("Debtor"), f/d/b/a Diamond P Tree Mulching. The court heard argument and evidence concerning the Objection on September 13, 2012 (the "Hearing").

This matter is subject to the court's core jurisdiction. 28 U.S.C. §§ 1334(a) and 157(b)(2)(B) and (E). This memorandum opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052 and 9014.

### I. Background

Debtor owns certain real property in Clifton, Bosque County, Texas, consisting of two adjacent lots (the "Clifton Property"). One lot contains what was Debtor's primary residence ("Lot 136"); the other, a workshop used in connection with Debtor's welding business ("Lot 152").

On or around September 2011, Debtor left the Clifton Property and moved to Keller, Texas. After his move to Keller, Debtor ceased using Lot 136 as a residence. Nevertheless, Debtor returned to Lot 152 every two to three weeks to conduct business in the workshop located on Lot 152 and visit family. During such visits, Debtor typically spent the night or the weekend in the workshop, which was equipped with a sofa bed and refrigerator. Debtor never resided in the workshop (and hence never resided on Lot 152).

On March 16, 2012 (the "Petition Date"), Debtor filed chapter 7 bankruptcy. In his Schedule C,[1] Debtor claimed Lot 152 as exempt property under Texas law. In his Statement of Intention,[2] Debtor surrendered his interest in Lot 136. Debtor's Schedule A indicated that Lot 136 was subject to a secured debt with no equity above such debt and that Lot 152 was free and clear of liens.

On June 13, 2012, the Trustee filed the Objection. On September 13, 2012, the court conducted the Hearing. At the Hearing, Debtor testified that he surrendered Lot 136 because he could no longer make mortgage payments on that property and had no intention of returning to

---

[1] The Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Code"), requires a debtor to file a schedule of assets and liabilities. Code § 521(a)(1)(B)(i). Debtor claimed Lot 152 as exempt property pursuant to Tex. Const. art. XVI, §§ 50 and 51, and Tex. Prop. Code §§ 41.001 and .002.

[2] The Code also requires a debtor to file a statement of intention with respect to the retention or surrender of the debtor's property. Code § 521(a)(2)(A).

the same. Debtor also testified that he intended to improve Lot 152 by making it "somewhat livable for the weekend" if granted the exemption as to that property.

## II. Discussion

At issue before the court is whether a business homestead may survive the abandonment of an accompanying residential homestead. The Trustee asserts that Lot 152 cannot be an exempt homestead because Debtor uses Lot 152 primarily for business purposes and, in any event, has not used the Clifton Property in a manner consistent with homestead usage as of the Petition Date.

Debtor argues that his move to Keller and surrender of Lot 136 did not amount to abandonment of the Clifton Property and therefore, Lot 152 is an exempt homestead.

A debtor may chose to exempt property under the federal or state exemption scheme. Code § 522(b). Whether property qualifies as exempt is "determined by the facts and law as they exist on the date of filing the bankruptcy petition." *Zibman v. Tow (In re Zibman)*, 268 F.3d 298, 302 (5th Cir. 2001) (citing *White v. Stump*, 266 U.S. 310, 312 (1924)).

Texas law permits a debtor to exempt homestead property. TEX. PROP. CODE § 41.002(a). To qualify for the exemption, property must be used "for the purposes of an urban home[3] or as both an urban home and a place to exercise a calling or business . . . ." *Id.* The debtor bears the initial burden of proving "overt acts of homestead usage" and the "intention to claim the land as homestead." *First Interstate Bank of Bedford v. Bland*, 810 S.W.2d 277, 286 (Tex. App. 1991).[4]

---

[3] The Trustee characterized Debtor's homestead as "urban," whereas Debtor characterized his homestead as "rural." This dispute was not discussed at the Hearing. The court does not opine as to the appropriateness of either characterization because, in any event, Debtor would have had to have resided on the property.

[4] Although possessing, using and residing upon property is sufficient to establish the homestead exemption, merely occupying property for a limited duration is not. *Compare Arnold v. Quigley (In re Quigley)*, No. 09-43357-dml, 2011 Bankr. LEXIS 1004, at *12-13 (Bank. N.D.Tex. Mar. 16, 2011) (finding debtor's four-year residency upon property sufficient to establish homestead usage and intent) *with Hilliard v. Home*

Once the initial burden is met, the objecting party must prove that the exemption is not properly claimed. FED. R. BANKR. P. 4003(c). "Under Texas's generous homestead law, homestead rights may be lost only through death, abandonment or alienation." *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 310 (5th Cir. 2003) (citations omitted); *see also Denmon v. Atlas Leasing, L.L.C.*, 285 S.W.3d 591, 595 (Tex. App. 2009) (citations omitted). An individual may abandon a portion of a homestead, just as he may the whole. *See Mays v. Mays*, 43 S.W.2d 148, 151 (Tex. Civ. App. 1931). For abandonment to occur, an individual must cease to use the property in question and intend to abandon that property permanently. *In re Perry*, 345 F.3d. at 310, n.8. However, physical absence alone does not constitute abandonment—an individual must intend to leave the property and never return. *See In re Anderson*, 240 B.R. 254, 258 (Bankr. W.D. Tex. 1999).

The court finds that Debtor abandoned Lot 136. Subsequent to September 2011, Debtor failed to return to Lot 136 and use it as a residence. Although absence alone does not establish abandonment, here, Debtor not only left Lot 136, but also manifested his intent to permanently abandon that lot, as evidenced by his Statement of Intention and testimony at the Hearing.[5] Debtor's decision to surrender Lot 136 appears to be a logical one because Debtor's testimony and schedules reflect that he had little, if any, equity in that home.

Ultimately, for Debtor's exemption claim to succeed, Debtor must demonstrate the homestead character of Lot 152—specifically, that he used, and intended to use, Lot 152 as a home. Debtor has failed to do so. Debtor did not, nor has he ever, resided upon Lot 152. The workshop, and by implication, the lot on which it sits, has predominantly been a place of

---

*Builders Supply Co.*, 399 S.W.2d 198, 201 (Tex. App. 1966) (rejecting debtor's homestead claim where debtor only occupied property over weekends and other times of limited duration).

[5] The court does not decide whether Debtor's Statement of Intention, of itself, is sufficient to establish abandonment. The court's conclusion derives from Debtor's actions *and* intentions.

business. The fact that Debtor continued to use the workshop after moving to Keller does not lend weight to the homestead argument. Further, the record lacks any evidence to suggest that Debtor conditioned the workshop for residential purposes or intended to do so. If anything, the record suggests that Debtor envisioned the property as a *weekend* home. That does not a homestead make. Because Lot 152 does not meet the test for a homestead, it cannot be claimed as exempt.[6]

### III.  Order

Based upon the record of the Hearing and other relevant proceedings in this chapter 7 case, it is

**ORDERED** that the Objection is **SUSTAINED.**

### ### END OF MEMORANDUM OPINION AND ORDER ###

---

[6] Prior to 1999, property used "to exercise the calling of business" qualified as exempt business homestead. *See Nesco Acceptance Corp. v. Jay (In re Jay)*, 432 F.3d 323, 325 (5th Cir. 2005) (quoting TEX. CONST. OF 1876, art. XVI, § 51). In this manner, a debtor could surrender a residential homestead without forgoing the business homestead exemption. *Id.* In 1999, the Texas Constitution was amended to provide homestead protection only to property used "for the purposes of a home, or as *both* an urban home and a place to exercise a calling or business." *Id.* (quoting TEX. CONST. art. XVI, § 51) (emphasis added). In the case at bar, Debtor did not use Lot 152 as a home and, in light of the amendment, cannot claim the homestead exemption.